2026 IL App (2d) 250521-U
No. 2-25-0521
Order filed July 21, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,

v.

MICHAEL J. REYES, Defendant-Appellant.

Appeal from the Circuit Court of Kane County.
Honorable René Cruz, Judge, Presiding.
No. 07-CF-1821

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Birkett and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The third-stage dismissal of defendant's postconviction petition is affirmed because we cannot say that the trial court abused its discretion in preventing defendant from testifying at the evidentiary hearing as defendant did not make an offer of proof.

¶ 2    Defendant, Michael Reyes, appeals the order of the circuit court of Kane County dismissing his postconviction petition under the Post-Conviction Hearing Act (Act) (720 ILCS 5/122-1 *et seq.* (West 2014)).  Defendant argues that the matter should be remanded because the trial court erred by refusing to allow him to testify in support of his ineffective assistance claim at the evidentiary hearing.  We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      As the facts are well known to the parties and set forth in detail in our previous dispositions, we set forth only those facts relevant to this appeal.  Defendant was convicted by a Kane County jury in 2013 on six counts of first-degree murder (720 ILCS 5/9-1(a)(1), (2), (3) (West 1992)) for the 1993 shooting deaths of brothers Jesus and Francisco Montoya.  We affirmed defendant's conviction on direct appeal.  *People v. Reyes*, 2015 IL App (2d) 130832-U (*Reyes I*).

¶ 5      In 2015, defendant filed a postconviction petition alleging, in part, ineffective assistance of trial counsel for failing to investigate and call alibi witnesses.  Defendant's supplemental postconviction petition, filed in December 2018, included affidavits from defendant's mother, Teresa Martinez, and sister.  In her affidavit, Martinez stated that, in 1993, she lived in the same house as defendant.  On the night of the murders, defendant remained at home throughout the day and night with his then-girlfriend, Sylvia Ortiz.  Martinez stated that she was also home throughout the day and night and that defendant never left the house.  Based on the layout of the house, Martinez testified that she would have heard defendant leave if he had done so.  She repeatedly attempted to provide this information to defense counsel, but defense counsel never had time to speak with her.  Martinez attended defendant's trial every day and was available to provide alibi testimony.

¶ 6      Following the dismissal of defendant's postconviction petition at the second stage of proceedings, we reversed and remanded for a third-stage evidentiary hearing.  *People v. Reyes*, 2022 IL App (2d) 210143-U (*Reyes II*).  At the evidentiary hearing, Martinez testified that defendant lived with her at the time of the shooting.  On March 8, 1993, she arrived home from work at about 3:45 p.m. and heard defendant and Ortiz upstairs.  She called upstairs to let them know she was home, and defendant responded.  Because it was an old house, she testified that she

would have heard defendant leave if he had done so, but she did not hear him leave. The following morning, she called upstairs to wake defendant for work, and he responded. She also observed that Ortiz's car was still at the house. Martinez admitted, however, that she did not actually see either defendant or Ortiz inside the home on the night of the murders.

¶ 7 Martinez further testified that she remembered the events of March 8, 1993, because Frank Montoya called the house three times. Each time, she called upstairs to defendant, and he instructed her to tell Montoya that he was not home. She also remembered the events because, on March 10, 1993, police officers came to her workplace and obtained consent to search her home. The officers told her that defendant would probably be charged with the murders of the Montoya brothers, which had occurred two days earlier. Prior to trial, she informed defense counsel and the investigators that defendant was at home on the night of the murders. Defense counsel told her she would be called as a witness, but neither the defense nor the State called her to testify.

¶ 8 Julia Yetter[1] testified that she was lead defense counsel at defendant's trial and was assisted by two other assistant public defenders and two investigators. Prior to trial, she was aware of multiple potential alibi witnesses. While reviewing the State's discovery materials, she learned that Ortiz had initially provided an alibi for defendant. However, during subsequent conversations with police, Ortiz could no longer recall whether she was at home with defendant on the night of the murders. Yetter also learned from her team that Martinez and defendant's sister could provide alibi testimony, but that Martinez could not say she actually saw defendant on the night of the murders.

¶ 9 Yetter determined that the best trial strategy was to discredit the State's witnesses, most of whom were testifying pursuant to agreements with the State and federal prosecutors. She believed

---

[1]At the time of the hearing, Yetter was an associate judge in Kane County.

an alibi defense was weak because Ortiz was "waffling" and Martinez and defendant's sister were family members whose credibility the jury might question. Yetter further testified that defendant's mother had not provided her team with any particularly memorable event associated with March 8, 1993, that would explain her ability to recall the events of that evening. Finally, Yetter believed that presenting an alibi defense would open the door to damaging rebuttal evidence because the State had information that another individual was involved in planning the murders and that phone calls had been placed from defendant's home to that individual on the night of the murders.

¶ 10 The trial court refused to allow defendant to testify, noting that his proposed testimony was not included in his postconviction petition and that permitting it would exceed the scope of our remand order. Following closing arguments, the trial court denied the petition, finding that defendant failed to establish that Yetter's performance was objectively unreasonable. The trial court noted that Martinez's 2018 affidavit did not mention the events of March 10, 1993, and questioned whether she had ever relayed that information to the defense team. The trial court also found it significant that, when Martinez spoke with police two days after the murders, she did not tell them that defendant had been at home on March 8, 1993. Finally, the trial court found that the defense team had thoroughly investigated all potential defenses and concluded that Yetter's strategic decision not to call alibi witnesses did not constitute deficient performance.

¶ 11 On appeal from that order, we concluded that the trial court had acted under the mistaken belief that it lacked any discretion to allow defendant to testify, and remanded for the trial court to determine whether, in its discretion, defendant should be allowed to testify. *People v. Reyes*, 2025 IL App (2d) 240172, ¶¶ 32-34 (*Reyes III*).

¶ 12 On remand from Reyes *III*, defendant filed a motion to allow his testimony. Following arguments on the motion, the trial court again denied defendant's request to testify. The trial court

concluded that defendant's testimony was unnecessary because it had heard Martinez's testimony regarding the alibi and what she told Yetter, and Yetter had testified that she was aware of the alibi defense but made a strategic decision not to call any alibi witnesses at trial. The trial court found that defendant's testimony was not relevant because it could neither alter defense counsel's strategic choices nor resolve the inconsistencies between Martinez's testimony and her affidavit. The trial court again denied defendant's postconviction petition, and defendant thereafter filed a timely notice of appeal.

¶ 13                                II. ANALYSIS

¶ 14    On appeal, defendant argues that the trial court erred in refusing to allow him to testify. The rules of evidence are not abandoned during an evidentiary hearing on a postconviction petition, and the admission of evidence at such a hearing is within the sound discretion of the trial court. *People v. Tenney*, 205 Ill. 2d 411, 436 (2002). We will not disturb the trial court's evidentiary rulings absent a clear abuse of discretion. *Id.*

¶ 15    An adequate offer of proof is the key to preserving a claim of error in the exclusion of evidence. *People v. Thompkins*, 181 Ill. 2d 1, 10 (1998). "The two primary functions of an offer of proof are to disclose to the trial judge and opposing counsel the nature of the offered evidence, enabling them to take appropriate action, and to provide the reviewing court with a record to determine whether exclusion of the evidence was erroneous and harmful." *Id.* "Where it is not clear what a witness would say, or what his basis would be for saying it, the offer of proof must be considerably detailed and specific. A reviewing court can thereby know what was excluded and determine whether the exclusion was proper." *People v. Peeples*, 155 Ill. 2d 422, 457-58 (1993). The failure to make an adequate offer of proof forfeits the issue on appeal. *Id.* at 458.

¶ 16    In the present case, defendant failed to make an offer of proof, and we are therefore unable to review the merits of his claim. Without knowing the substance of defendant's proposed testimony, we cannot meaningfully assess whether the trial court erred in excluding the evidence or whether any such error was harmful. Although defendant generally asserts that his testimony would have corroborated Martinez's testimony regarding the alibi and provided crucial information concerning defense counsel's reasons for not calling alibi witnesses at trial, he has never identified the substance of his proposed testimony or described the conversations he allegedly had with defense counsel. Accordingly, we cannot determine whether his testimony would have supported his claim of ineffective assistance of counsel.

¶ 17    Our conclusion is supported by *People v. Andrews*, 146 Ill. 2d 413 (1992). In that case, the defendant was tried twice. After the first trial ended in a hung jury and a mistrial was declared, defendant's trial counsel spoke with members of that jury. Following the second trial, at which the same attorney represented defendant, defendant was convicted of the charged offenses. *Id.* at 419-20. During a subsequent *Batson* hearing, the defendant sought to elicit testimony from trial counsel regarding counsel's conversation with members of the first jury. The trial court sustained the State's objection. *Id.* at 420. On appeal, the defendant argued that excluding the testimony was error. *Id.* Our supreme court found the issue forfeited, noting that, after the objection was sustained, defendant's *Batson* counsel stated: "[J]ust for the record I would introduce that or offer that to show if in fact the prosecutors were present [during the conversation] this goes into their thinking when selecting the second jury." *Id.* at 422. The court explained that:

"No specifics were offered concerning the contents of the statements that were made during the alleged conversation [between defendant's trial counsel and members of the first jury]. In fact, no offer [of proof] whatsoever was made as to what was said in the conversation.

There is thus no record from which this court can determine if the excluded evidence had any relevance to the proceedings at hand. Defense counsel's statement amounted to no more than mere speculation as to what she believed the relevancy of the testimony might be, without any reference to what the testimony would actually consist of. Such speculation is not sufficient to preserve the issue for review." *Id.*

¶ 18    Here, as in *Andrews*, defendant neither made an offer of proof nor provided any specific details regarding the substance of his proposed testimony, including his conversations with Yetter or how his testimony would have corroborated Martinez's testimony. Thus, there is no record from which this court can determine whether the excluded testimony was relevant to the proceedings or whether the trial court erred in excluding it. Defendant's argument that the trial court improperly precluded his testimony is thus forfeited. See *id.* at 421-22; see also *People v. Boston*, 2016 IL App (1st) 133497, ¶ 64 ("If a criminal defendant claims on appeal that he was not able to prove his case because the trial court improperly barred him from presenting evidence but he failed to make an adequate offer of proof, he forfeits review of the issue on appeal"); *People v. Bowman*, 2012 IL App (1st) 102010, ¶ 39 (declining to find error in the exclusion of evidence regarding the victim's reputation for violence where "the record [did] not indicate what evidence would have been presented"); and *People v. Jose-Nicolas*, 2019 IL App (3d) 160414-U, ¶ 40 (Schmidt, J., dissenting) (defendant forfeited his argument that the trial court improperly limited his testimony at his third-stage postconviction evidentiary hearing by failing to make an offer of proof).[2] It was defendant's burden to preserve the alleged error and present a sufficiently complete record to support his claim. By failing to make an offer of proof, defendant deprived this court of an

---

[2]We may rely on the reasoning of a nonprecedential decision. *People v. Ingram*, 2020 IL App (2d) 180353, ¶ 21 n.1.

adequate record to review the propriety of the trial court's ruling. Accordingly, we cannot conclude that the trial court abused its discretion in denying defendant's request to testify at the evidentiary hearing.

¶ 19                                    III. CONCLUSION

¶ 20     For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 21     Affirmed.